**Opinion filed August 23, 2012**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00364-CR

_____

## PAUL TORRES, Appellant

## V.

## STATE OF TEXAS, Appellee

**O**n Appeal from the 106th District Court

**Gaines County, Texas**

**Trial Court Cause No. 10-4100**

### M E M O R A N D U M   O P I N I O N

The jury convicted Paul Torres of aggravated assault and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. The jury also made an affirmative deadly weapon finding. Appellant challenges the sufficiency of the evidence supporting his conviction in a single issue. We affirm.

*Background Facts*

Appellant was convicted of assaulting Javanna Tarwater with a baseball bat to the extent that it caused her serious bodily injury. Tarwater testified that she owned a trucking company and that appellant began driving for her in October 2009. They started dating each other in

December 2009. The assault occurred on March 1, 2010. Tarwater testified that she traveled with appellant from her home in Seminole to his home in Seagraves sometime after 8:15 p.m. on March 1. They initially sat down at his home and watched a movie in the living area of the home. An argument between the two subsequently occurred. Tarwater testified that appellant got "hateful" during the argument and that, at one point, he stood up and said, "I'll show you." She testified that appellant retrieved a baseball bat and began striking her with it. Tarwater stated that appellant initially struck her left knee with the bat and that he continued to hit her all over her body with the bat as well as stomping on her.

Tarwater testified that she was not able to walk or crawl after the attack. Appellant initially carried her to a bathroom where he cleaned her up. He then carried her to a bed where she lay several hours prior to being transported to the hospital on March 2, 2010. Tarwater testified that appellant had her make up a story about being out with a friend in Hobbs, New Mexico, when the assault occurred. She further testified that appellant made her tell this story to his nephew, Armando Torres, over the phone to see if it was believable.

Appellant subsequently picked up his sister, Diana Houston, on March 2 and brought her to his home. Houston attempted to dress Tarwater, but she was unable to do so. Houston then told appellant to get an ambulance for Tarwater. The ambulance personnel transported Tarwater from appellant's house in Seagraves to the hospital in Seminole. Tarwater was subsequently transferred to a Lubbock hospital because of the severity of her injuries, which included both of her legs being fractured. She remained hospitalized in Lubbock for several days.

Tarwater initially told the ambulance personnel that she was assaulted while walking from the Yucca Bar in Hobbs. At trial, she denied being in Hobbs on the date of the assault. She testified that she initially told the Hobbs story because of her fear of appellant with regard to the safety of her children and grandchildren and because of her concern that her son would retaliate. Sergeant Jeff James of the Seminole Police Department testified that, after her children left her exam room at the hospital in Seminole, Tarwater informed him that appellant assaulted her. Tarwater also testified that she informed ambulance personnel of appellant's involvement during the ambulance ride from Seagraves to Seminole.

Deputy Shane Scott of the Gaines County Sheriff's Department initially responded to appellant's home when he was advised that ambulance personnel had been dispatched there to

2

treat an assault victim. He did not pursue an investigation of the incident at that time because he believed the assault had occurred in Hobbs. In that regard, appellant told him that Tarwater had been brought to his house the night before. Deputy Scott also testified that an inspection of Tarwater's purse with her daughter present revealed that nothing was missing from it, including cash and bank cards.

Sergeant James contacted Deputy Scott after Tarwater reported appellant's involvement in the assault. Deputy Scott contacted appellant at that time. Appellant voluntarily accompanied Deputy Scott to his office and gave a statement. He also consented to a search of his home. A baseball bat was not found during the search.

Appellant testified on his own behalf during the guilt/innocence phase. He testified that he and Tarwater spent the night together at his house in Seagraves on February 28, 2010. He stated that they woke up at 5:00 a.m. on March 1 and that he drove Tarwater to her house in Seminole at 6:00 a.m. Appellant testified that he did not see Tarwater again until 1:00 a.m. on March 2 when he observed headlights from a pickup in front of his house. After the pickup drove away, he testified that he saw a shadow leaning by his car. Appellant stated that he then discovered that the pickup had dropped off Tarwater at his house. He alleged that Tarwater told him that she had been "jumped" in Hobbs. Appellant stated that he helped Tarwater walk inside his house, at which time he helped clean her up and put her to bed. Appellant testified that he did not call the police or get medical help for Tarwater because she did not want him to do so.

*Standard of Review*

In a single issue, appellant challenges the legal sufficiency of the evidence supporting his conviction. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). In conducting a legal sufficiency review, we are required to defer to the jury's role as the sole judge of witness credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. at 319;

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and, therefore, defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

*Analysis*

Appellant premises his challenge to the sufficiency of the evidence on a variety of factors, including inconsistencies in Tarwater's version of the events, the lack of physical evidence, and his cooperation with authorities in the investigation. There is no dispute that Tarwater initially reported being assaulted in Hobbs. However, she repudiated the initial report at trial. She also offered reasons why she initially reported that appellant was not involved in the assault. Accordingly, the jury had before it an explanation for the inconsistencies in Tarwater's account if it cared to believe it. We also note that the jury also had before it the rigorous cross-examination of Tarwater by defense counsel.

Our review of the evidence in this case focuses almost exclusively on the credibility of the witnesses. Appellate courts afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record. *Id.* It was within the jury's province to accept Tarwater's trial testimony as the credible account of what transpired between her and appellant. Furthermore, it was well within the jury's right to reject Tarwater's initial report and appellant's self-serving version of the events. In support of the jury's credibility determination, we note that appellant's version suffered from its own inconsistencies, including his testimony that Tarwater was able to walk inside his home with two broken legs and that he did not seek medical help for Tarwater's very serious injuries for several hours because she did not want him to do so. Reviewing all of the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's sole issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 23, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.